IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Owners Insurance Company,           )
                                     )
                   Plaintiff,        )        C/A No. 2:05-2916
                                     )
            vs.                      )
                                     )        **ORDER** and **OPINION**
Lang's Heating & Air Conditioning,   )
Selective Insurance Company, Harleysville  )
Insurance Company, and Federated     )
Insurance Company,                   )
                                     )
                   Defendants.       )
_____)

## I.    BACKGROUND

This action is before the court on plaintiff Owners Insurance Company's

("Owners") request for partial summary judgment as to defendant Selective Insurance

Company's ("Selective") obligations under a CGL policy issued to their mutual insured,

Lang's Heating & Air Conditioning ("Lang"). In the underlying state action,

homeowners filed a lengthy complaint against several subcontractors who worked on

their house. Lang, one of the subcontractors, installed the HVAC system. Homeowners

purchased the house around October 9, 1994, but subsequent inspections revealed a

variety of latent defects, negligently performed work and property damage. The

complaint generally alleges Lang's negligent workmanship permitted water infiltration,

which has caused damage to other parts of the house.

On October 12, 2005, Owners filed a complaint in this court, naming Lang,

Selective, Harleysville Insurance Company, and Federated Insurance Company, seeking

a declaratory judgment as to Owners' obligation to defend and/or indemnify Lang in the

underlying suit.  Alternatively, Owners requests a determination of the obligations of

Lang's other insurers (Selective, Harleysville and Federated).  Selective has filed a

counterclaim also seeking a determination of its obligations to defend and/or indemnify

Lang in the state action.  In the meantime, Owners has provided a defense for Lang in

state court; Selective has not.

On January 30, 2006, Owners filed this motion for partial summary judgment,

seeking a determination that Selective's duty to provide a defense is triggered.  The

Selective policy ran from October 7, 1994 to October 7, 1995.  The Owners policy ran

from April 1, 1993 to April 1, 1994.  Harleysville has been dismissed from the suit.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary

record, there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  Evidence

should be viewed in the light most favorable to the nonmoving party.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, a "mere scintilla" of evidence

will not preclude summary judgment.  The court's inquiry is "not whether there is

literally no evidence, but whether there is any [evidence] upon which a jury could

properly . . . find a verdict for the party" resisting summary judgment.  Id. at 251.

## III.    DISCUSSION

Selective challenges Owners' motion on three grounds.

### a.     Standing

Selective contends Owners lacks standing to seek a determination of a co-

insurer's obligation to defend.  Owners is not seeking reimbursement for the costs of the

defense,[1] but rather, seeks a determination of Selective's obligation to defend.  Owners contends Selective's duty to defend will be an issue in future discussions regarding Selective's duty to indemnify.  Owners has a stake in the outcome of that latter determination because both policies could be triggered under the continuous trigger doctrine.[2]

As a practical matter, Selective is challenging the court's ability to resolve an issue Selective itself raises in its counterclaim.  Selective's counterclaim seeks a determination of its obligation to defend.  Owners' motion seeks the same determination. Since Owners' motion requests the same analysis as is sought in Selective's own counterclaim, Selective's standing objection is unavailing.[3]

### b.    Judicial Estoppel

Selective contends Owners is estopped from alleging Selective owes a duty to defend.  Selective notes that both insurers' policies are nearly identical.  While Owners has provided a defense for Lang, Owners' complaint argues its policy does not trigger a duty to defend or indemnify.  Selective contends that it is inconsistent for Owners to deny

---

[1] Sloan Construction Co. v. Central National Insurance Co., 269 S.C. 183, 236 S.E.2d 818 (1977) generally precludes an insurer from seeking contribution for the cost of defense from another insurer.

[2] The continuous trigger doctrine provides that "coverage is triggered at the time of an injury-in-fact [whenever the damage can be shown in fact to have first occurred, even if it is before the damage became apparent] and continuously thereafter to allow coverage under all policies in effect from the time of injury-in-fact during the progressive damage."  Joe Harden Builders, Inc. v. Aetna Cas. and Sur. Co., 326 S.C. 231, 237, 486 S.E.2d 89, 90 (1997).

[3] Prior to the hearing, Lang's counsel emailed the court noting it was in favor of Owners' motion.  At the hearing Selective stated it would concede the standing objection if Lang were to raise or join in the motion.

its own obligations but argue Selective incurs those obligations.  In reply, Owners concedes it has the duty to defend.  With this concession, there is no inconsistency between Owners' actions and argument.

Selective cannot satisfy the elements of judicial estoppel.  "The application of judicial estoppel is controlled by federal law and is invoked at the court's discretion as the equities of the case demand." Hansen v. North Trident Regional Hosp., Inc., 60 F. Supp. 2d. 523, 528 (D.S.C. 1999) (Norton, J.).  The elements of judicial estoppel include:

> 1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage.

King v. Herbert J. Thomas Memorial Hosp., 159 F.3d 192, 196 (4th Cir. 1998).  The second and third element cannot be met because Owners' prior position has not been accepted by a tribunal and there is no evidence that Owners has intentionally taken inconsistent positions to gain an unfair advantage.  As such, this challenge is unpersuasive.

### c.    Duty to Defend

Finally, Selective contends it has no duty to defend because the claims against Lang's are not covered under the policy.  As a general matter,

> the determination whether a liability insurance company is obligated to defend an action under the policy provisions is based on the allegations of the complaint.  If the alleged facts in the complaint fail to bring the case within the policy coverage, the insurer is free of the obligation to defend.

First Fin. Ins. Co. v. Sea Island Sport Fishing Soc., Inc., 327 S.C. 12, 14, 490 S.E.2d 257, 258 (1997).  However, "if the underlying complaint creates a possibility of coverage

4

under an insurance policy, the insurer is obligated to defend." <u>Isle of Palms Pest Control</u>

<u>Co. v. Monticello Ins. Co.</u>, 319 S.C. 12, 15, 459 S.E.2d 318 (Ct. App. 1994).  An insurer

may not defend only covered claims; even if there is only one aspect of the claim that

could possibly be covered, the insurer must defend the entire suit. <u>Id</u>.  Selective argues at

least one, if not more, exclusions apply to defeat coverage, and thus there is no possibility

of coverage.  Generally, Selective contends (1) Lang's claims are not occurrences

because they are for faulty workmanship, (2) the claims against Lang are for Lang's own

work product, and therefore do not amount to property damage as specified in the policy;

and (3) the claims against Lang are actually for breach of contract, which is not covered.

Selective suggests that "if the court is inclined to resolve this issue by summary

judgment, there exists material facts in controversy as to whether a covered claim exists."

(Selective mot. in opp. at 10.)  Discovery has not been initiated in this case.  If there are

material facts in dispute regarding coverage, then it is unlikely Selective can state with

certainty that there is no possibility of coverage.  As Owners notes, the fact that there is a

dispute as to coverage demonstrates there is the possibility of coverage.[4]

Further, Selective's substantive arguments are unpersuasive.  The underlying

complaint alleges:

> 59.     As a direct and proximate result of the failure of the defendant . . .
> Lang's Heating and Air Conditioning . . . , the plaintiffs have
> suffered and/or will suffer damages arising out of the need to
> remove the existing EIFS and the need to replace it with a new
> finishing, and/or siding, as well as the need to repair damaged
> wood, sheetrock and other damaged materials within the house

---

[4] For thousands of years, western civilization has recognized that "nothing is
impossible." <u>Luke</u> 1:37 (New International Version).

plus any additional damages determined.

. . . .

62.     The warranty of workmanlike service was breached in that the residence has experienced leaking and water infiltration into the interior and underlying surfaces causing wood rot and other severe property damage.

Compl. ¶¶ 59, 62.  Homeowners' negligence count incorporates paragraphs 59 and 62 and generally alleges the home was negligently designed and constructed.  See compl. ¶¶ 66 - 78.  Selective contends the underlying action is truly one in contract, not tort, and thus not covered by the policy.  However, the facts of the state supreme court's latest decision in L-J, Inc. v. Bituminous Fire and Marine Ins. Co., 366 S.C. 117, 621 S.E.2d 33 (2005), refute this assertion.  As in L-J, the underlying complaint in this action alleges damage resulting from faulty workmanship, and states claims for breach of contract, breach of warranty, and negligence.

Further, the claims against Lang's constitute an "occurrence" as defined by even the most restrictive interpretations of L-J.  L-J considered "whether property damage to the work product alone, caused by faulty workmanship, constitutes an occurrence."  L-J, 366 S.C. at 121, 621 S.E.2d at 34.  The court noted that "a CGL policy may . . .  provide coverage in cases where faulty workmanship causes a third party bodily injury or damage to other property, not in cases where faulty workmanship damages the work product alone." Id. at 123, 621 S.E.2d at 36.  Other courts have questioned whether L-J permits an insured general contractor, responsible for an entire building, to claim coverage for damage to a structure caused by water intrusion resulting from its own faulty workmanship.  See Okatie Hotel Group, LLC v. Amerisure Ins. Co., No. 04-2212, 2006

6

WL 91577 (D.S.C. Jan. 13, 2006); <u>Pennsylvania Nat. Mut. Ins. Co. v. Ely Wall &</u>

<u>Ceilings, Inc</u>., No. 04-1547, 2006 WL 569589 (D.S.C. March 6, 2006 ).  However, the

faulty workmanship of a subcontractor resulting in damage to another part of the building

(not worked on by the subcontractor) does amount to an "occurrence" under <u>L-J</u>.  The

homeowners allege Lang's faulty workmanship led to damage to property on which

Lang's did not perform work.  <u>See</u> compl. ¶¶ 59 (damaged wood, sheetrock) and 62

(wood rot).  As such, homeowners' allegations are consistent with the underlying

complaint in <u>L-J</u>.  The facts and holding of <u>L-J</u> belie Selective's contention that the

homeowners' claims can never amount to an "occurrence."

True to its name, Selective advances the novel argument that carriers are free to

"select" which claims to defend, notwithstanding <u>First Financial</u>, <u>Isle of Palms</u>, and over

twenty-five years of state insurance law.  Selective suggests that insurers' decisions

would be tempered by the possibility that a court would ultimately find coverage, leaving

the carrier liable for reimbursement of defense costs and possible tort claims and punitive

damages.  In actuality, an insurer taking this approach would incur little risk, since

neither the co-insurer nor insured could seek reimbursement for defense costs.  <u>See</u>

<u>Sloan</u>, 269 S.C. at 186, 236 S.E.2d at 820.  However, Selective's argument is unavailing.

For almost thirty years courts of this state have held that the duty to defend and duty to

indemnify are "separate and distinct" obligations.  <u>Id</u>. (noting the "duty to defend exists

regardless of the insurer's ultimate liability to the insured").  South Carolina law is clear

on the insurer's obligation to defend when the underlying complaint creates the

possibility of coverage.  This court will not overturn decades of state insurance law at

7

Selective's request.

## IV.    CONCLUSION

Viewing the evidence in the light most favorable to Selective, the court finds there is a possibility of coverage for the underlying claim.  For the reasons stated above, it is therefore **ORDERED** that plaintiff's motion for partial summary judgment as to defendant Selective's obligation to defend Lang's in the underlying state court action is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**


**April 10, 2006**
**Charleston, South Carolina**

8